UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO 3:17-CV-684-GNS-CHL

WILLIAM OTTO AYERS,                                                    Plaintiff,

v.

JONATHAN HALL, et. al.                                               Defendants.

### Report & Recommendation

Petitioner William Otto Ayers ("Petitioner" or "Ayers") asks this Court for a writ of habeas corpus pursuant to 28 U.S.C. §2254. (DN 1.)  Petitioner was convicted by a jury in Jefferson County District Court on November 13, 2014 for violations of Kentucky Revised Statute ("KRS") 186.510 license to be in possession and to be shown on demand, and KRS 511.080 criminal trespass in the third degree in *Commonwealth v. William O Ayers*, 12-M-13071. (DN 14-3, at PageID # 171, 172.)  Respondent, Johnathan Hall ("Respondent") filed a Response in opposition. (DN 14.) Ayers subsequently filed a Reply. (DN 27.) Therefore, this matter is ripe for review.

Pursuant to 28 U.S.C. §636(b)(1)(A) & (B), the District Judge referred this matter to the undersigned Magistrate Judge. (DN 4.) For the following reasons, the undersigned RECOMMENDS that Ayers's petition be DENIED.

### I.      FINDINGS OF FACT

On June 11, 2012, Petitioner was charged by citation with one count of (1) criminal trespass in the third degree, KRS 511.080; (2) loitering for prostitution purposes, KRS 529.080; and (3) license to be in possession and to be shown on demand, KRS 186.510.  (DN 1.) Petitioner did not file a state court collateral attack pursuant to RCr 11.42, but Petitioner appealed to the Jefferson Circuit Court as a matter of right, and that Court affirmed his convictions.  (DN 14-5, at PageID #

477.) In its opinion affirming Ayers's convictions, the Jefferson Circuit Court summarized the

underlying facts of the case as follows:

> On June 11, 2012, the police responded to a call of a vehicle parked in a vacant lot located at 1600 W. Main Street. Upon arrival, the police saw William Griffin, a/k/a China ("China"), a known transvestite prostitute, leaving the area. China was not seen on the lot, but a truck was noticed. As the police officer approached the truck, Ayers exited the truck. He was partially dressed. He refused a pat down search and could not produce a drivers license. The police informed Ayers that he could not remain on the property as he was trespassing. Ayers was given the opportunity to walk away from the lot or to call someone to pick him up. The police informed him they would not allow him to drive away as he could not produce a valid drivers license. The police also offered to give Ayers a ride to his destination of choice, which Ayers denied. Ayers was arrested and subsequently charged with Criminal Trespass in the Third Degree (KRS 511.080), Loitering for Prostitution Purposes-First Offense (KRS 529.080) and Failure to Have License in Possession to be Shown on Demand (KRS 186.510).
>
> Ayers' first trial ended in a mistrial on October 3, 2012. At a hearing outside the presence of the jury, China testified that he was the prostitute and the details of his encounter with Ayers before the arrival of the police. Judge Ann Bailey Smith presided over both of Ayers' trials. Before the second trial, counsel for Ayers argued the Loitering for Prostitution Purposes should be dismissed as Ayers was the patron, not the prostitute. The prosecutor also moved to amend the Loitering charge to Complicity, KRS 529.020. The Court denied both motions. After China presented to the jury the graphic details of his transaction with Ayers, the Court granted Ayers' Motion for a Directed Verdict and dismissed the loitering charge. The jury found Ayers guilty of the remaining two charges. On November 13, 2014 he was sentenced to ninety days confinement, conditionally discharged for two years, and fined a total of $750.00 and court costs of $135.00 were imposed.

(DN 14-5, at PageID #478.) Ayers raised five issues on direct appeal to the Jefferson Circuit Court:

(1) that the trial judge erred by allowing the testimony of China regarding the interaction with

Ayers even though the facts were not in dispute and when as a matter of law Ayers could not be

convicted of the charged offense, and that the jury should have been given a peremptory instruction

on the directed verdict; (2) that it was reversible error to not permit the defense of KRS 511.090(4)

regarding unimproved land be presented to the jury in the instruction; (3) that the police lacked a

reasonable and articulable reason to stop him in the lot and his arrest lacked probable cause; (4)

2

that Ayers could not be charged with violating KRS 186.510 as he did not possess a valid drivers license from any jurisdiction and therefore could not be a "licensee"; and (5) prosecutorial misconduct for reminding the jury of the testimony of the officers. (DN 14-5, at PageID # 340-344.) The Jefferson County Circuit Court rejected all of Ayers's claims and affirmed the judgment and conviction of the Jefferson District Court. (DN 14-5, at PageID #482.)

Both the Court of Appeals of Kentucky and the Supreme Court of Kentucky denied Ayers's request for discretionary review. (DN 14-6, at PageID #544, 591.) Ayers timely filed the instant §2254 Petition on November 15, 2017.  (DN 1.)

## II.    APPLICABLE LAW

First, before petitioning for habeas relief in federal court, state prisoners typically must exhaust all available state court remedies by fairly presenting all claims to the state courts. 28 U.S.C. §2254(c), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *Wilson v. Mitchell*, 498 F.3d 491, 498 (6th Cir. 2007). Second, to be timely, a habeas petition must satisfy a one-year statute of limitations. 28 U.S.C. §2254(d)(1). And third, a federal court generally may not reach the merits of any claims that were procedurally defaulted in state court, either by a state court's express application of a procedural rule or a petitioner's failure to fairly present the claim. *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013); *Reed v. Farely*, 512 U.S. 339, 354-355 (1994).

28 U.S.C. § 2254(d), as amended in the Antiterrorism and Effective Death Penalty Act of 1996, provides relief from a state conviction if the petition satisfies one of the following conditions:

The [state court's] adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2017). The Supreme Court of the United States has carefully distinguished federal habeas review from review on direct appeal.  As to § 2254(d)(1), when the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010).  Instead, the Court must ask "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.  The phrase "contrary to" means "'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Id*. at 405 (citing Webster's Third New International Dictionary 495 (1976)).  Thus, under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if (a) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (b) the state court decides a case differently than the Supreme Court "has on a set of materially indistinguishable facts." *Id*. at 405-06, 412-13.

Under the Aunreasonable application@ clause of § 2254(d)(1), the Court may grant the writ if the state court identifies the correct governing legal rule from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner=s case. *Id.* at 407-408, 413.  When the Court makes the Aunreasonable application@ inquiry it Ashould ask whether the state court's application of clearly established federal law was objectively unreasonable.@ *Id.* at 409.  Thus, the state court's application of clearly established federal law must be more than simply erroneous or incorrect. *Id.* at 409-411; *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 2002).

Under § 2254(d)(2), the petitioner may obtain relief only by showing the State court's conclusion is Aan unreasonable determination of the facts in light of the evidence presented in the State court proceeding.@   Thus, § 2254(d)(2) applies when a petitioner challenges factual determinations by the State court.  *See e.g. Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001); *Clark v. O=Dea*, 257 F.3d 498, 506 (6th Cir. 2001).

The habeas court must defer to the state court's findings of fact. §2254(e)(1); *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005). Although this standard is demanding, it is not insatiable, and this "[d]eference does not by definition preclude relief.@  *Id*. (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).   In sum, with respect to § 2254(d)(2), Afactual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. at 340.

Even if found, not all constitutional errors warrant relief.  *Williams*, 529 U.S. at 375. But where relief is warranted, the habeas court has broad discretion in fashioning it.  *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).  Both conditional grants, which "provide states with an opportunity to cure their constitutional errors," and absolute grants are possible. *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006).

## III.    ANALYSIS

### A.  Ayers's Grounds for Relief

In his §2254 Petition, Ayers raised three grounds for relief: (1) that the state trial court violated his constitutional rights when it denied his motion for a directed verdict when the evidence of

record established Ayers was not a licensee, a requisite element of violating KRS 186.510 and the instruction to the jury did not require the jury to find Ayers was a licensee to find him guilty; (2) the state trial court denied him due process of law when it denied both of Ayers's directed verdict motions on third degree criminal trespass and then refused to instruct the jury on the exception to the third degree criminal trespass contained in KRS 511.090(4); and (3) the state trial court denied Ayers due process of law when after evidence of the charge of loitering for prostitution purposes was presented to the jury, the trial court granted a directed verdict as a matter of law, but then failed to give a mandatory preemptory jury instruction that Ayers was not guilty of the charge of loitering for prostitution purposes. (DN 1, at PageID #5, 7, 8.)

**B.  Ground I: License to Be in Possession**

Petitioner asserts two arguments under Ground I: First, Petitioner asserts that his conviction for license to be in possession was unconstitutional because there was no evidence that he was a "licensee," a term undefined by KRS 186.010, and a directed verdict of acquittal should have been granted.  Second, Petitioner alleges that the jury instructions were in violation of his constitutional rights because they did not require the jury to find that he was a "licensee."

KRS 186.510 provides as follows,

> The licensee shall have his or her license in his or her immediate possession at all times when driving a motor vehicle and shall display it upon demand to the circuit clerk or examiner, a peace officer, a member of the Department of Kentucky State Police, or a field deputy or inspector of the Department of Vehicle Regulation or Transportation Cabinet or, pursuant to KRS 67A.075 or 83A.088, a safety officer who is in the process of securing information to complete an accident report. It shall be a defense to any charge under this section if the person so charged produces in court an operator's license, issued to him or her before his or her arrest and valid at the time of his or her arrest.

**1.  Procedurally Defaulted Claims**

A petitioner must exhaust all available state remedies as to each of his or her claims by fairly presenting the same to the state courts prior to bringing the same in a § 2254 petition.  28 U.S.C. § 2254(b)(1) (2017); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

A claim becomes procedurally defaulted in two circumstances: First where state court remedies have been exhausted within the meaning of § 2254, but where the last reasoned state court judgment declined to reach the merits because of a petitioner's failure to comply with a state procedural rule.  *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).  Second, where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.  *Id.*

In the first circumstance, a prisoner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). If the state court declines to reach the merits of the issue due to the petitioner's failure to comply with the procedural rule, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.* (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). The state court must "actually enforce" the state procedural rule in denying relief. *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010). In determining whether a state court actually enforced a procedural rule, the last state court rendering a judgment in the case must have 'clearly and expressly' stated that its judgment rests on the procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989) (*citing Michigan v. Long*, 463 U.S. 1032, 1043.)

7

In the second circumstance, a state prisoner may procedurally default a claim by failing to raise the claim in state court or failing to pursue the claim through the state's "ordinary appellate review procedures." *Williams v. Anderson,* at 806 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-47 (1999)).  Any such claim will be found procedurally defaulted if, at the time the prisoner's habeas petition is filed, state law does not permit the prisoner to further pursue the claim. *Id.* (citing *Engle v. Issac*, 456 U.S. 107, 125 n. 28 (1982)). This second type of procedural default is often confused with the doctrine of exhaustion; however, the two are distinct concepts. The exhaustion requirement in AEDPA refers only to "remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125, n.28. Where a state court remedy is no longer available to a petitioner because he failed to use it within the required time, procedural default, not exhaustion, bars federal court review.

When a petitioner procedurally defaults a claim or claims, the default can only be excused if he can establish cause and prejudice for the failure to raise his claims in the state courts or if he can show actual innocence. *Nesser v. Wolfe*, 370 F.App'x 665, 670 (6th Cir. 2010); *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). A petitioner may establish a fundamental miscarriage of justice by showing "a constitutional error probably resulted in the conviction of one who is actually innocent." *Nelloms v. Jackson*, 129 F. App'x 933, 936 (6th Cir. 2005) (citing *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2005) *abrogated on other grounds*.)

"Cause" must be something external to the petitioner, *Coleman v. Thompson*, 501 U.S. 722, 753 (1991), and "prejudice" must be so substantial that it undermines the integrity of the entire trial. *United States v. Frady*, 456 U.S. 152, 169-170 (1981). The Sixth Circuit has explained that

8

"[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (2006).

For assertions of "actual innocence," a petitioner must substantiate such claims with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, (1995). In evaluating claims of actual innocence, a court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332. The Sixth Circuit interprets "new evidence" to be "evidence that was not presented to the fact-finder during trial, i.e., newly presented evidence. *Aldridge v. Phillips*, 714 F. App'x 562, 564 (6th Cir. 2017) (quoting *Cleveland v. Bradshaw*, 693 F.3d 626, 633 (6th Cir. 2012)). Actual innocence denotes "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).

### a)  KRS 186.510- Directed Verdict

(1) <u>Procedural Default</u>

Petitioner's first argument is that there was no evidence that Petitioner was a licensee, and that he should have been granted a directed verdict of acquittal. (DN 1-1, at PageID # 26.) The Respondent argues that Petitioner never raised this issue before the state trial court at the time he made his motions for directed verdicts of acquittal. (DN 14, at PageID # 110.) Respondent further argues that this long standing procedural requirement is independent of any federal constitutional law and is an independent and adequate ground for precluding relief.  (DN 14, at PageID # 114.)

The Jefferson Circuit Court specifically stated,

9

> He failed to raise any argument about whether he could be charged with violating KRS 186.510 as he did not possess a valid driver's license from any jurisdiction and therefore could not be a 'licensee.' At trial, the evidence was established that [Ayers] did not have a valid driver's license from any jurisdiction. Ayers did not raise this issue as grounds for a directed verdict. Ayers has not properly preserved the issues of establishing the elements of the offense and the coinciding jury instruction. *Winstead v. Commonwealth*, 283 S.W.3d 678, 688 (Ky. 2009); RCr 9.54(2).

(DN 14-5, at PageID # 481-482.) Respondent argues that Petitioner did not make a motion for a directed verdict on the basis that there was no evidence that he was a licensee. (DN 14, at PageID #110.) Kentucky Rules of Civil Procedure Rule 50.01 provides in pertinent part, "A motion for a directed verdict shall state the specific grounds therefor." Kentucky appellate courts have steadfastly held that a failure to state specific grounds for a directed verdict will foreclose appellate review of the trial court's directed verdict motion. *Pate v. Commonwealth*, 134 S.W. 3d 593, 597-598 (Ky. 2008).

To determine whether the Jefferson Circuit Court relied on a state procedural rule, the undersigned reviews the cases the Jefferson Circuit Court relied upon in its analysis. *Winstead v. Commonwealth*, 283 S.W.3d 678, 688 (Ky. 2009) provides that an objection is not timely unless it is made as soon as the basis for objection becomes apparent. *Id.* at 688. If requested by the trial court, the objector must also specify the ground for the objection, and a different ground will not be deemed preserved for appellate review. *Id.* Further, RCr 9.54(2) specifically states, "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection." Based on the foregoing citations, the Jefferson Circuit Court rested its judgment on a state procedural bar that was

independent of any federal law.  The Jefferson Circuit Court declined to address Petitioner's arguments on the merits, but in doing so clearly and expressly relied on his failure to present the issue before the trial court as a procedural bar by citing to *Winstead* and RCr 9.54(2).  In this instance, the last reasoned state court judgment declined to reach the merits because of Petitioner's failure to comply with a state procedural rule. Accordingly, the undersigned finds the argument is procedurally defaulted.

(2) <u>Cause and Prejudice or Actual Innocence</u>

Accordingly, the undersigned turns to whether the procedural default can be excused for cause and prejudice or actual innocence.  Respondent argues that Petitioner cannot show cause and prejudice sufficient to overcome his procedural default.  (DN 14, at PageID # 114.)  Respondent argues that actual innocence does not apply since Petitioner's own testimony at trial provided that he had a valid operator's license due to a grace period provision in Tennessee. (Trial CD, 10/2/14, 2:55:10.) Petitioner specifically asserted that though his Tennessee license was expired, it was still valid because Tennessee has a grace period for 30 days after his birthday. (Trial, 10/2/14, 2:56:32.) Further, Respondent argues that an official from the Kentucky Department of Transportation testified that some 7 days after the Petitioner's arrest, a Tennessee license was transferred to Kentucky by Petitioner. (Trial, 10/1/14, 3:46:27.)

Petitioner argues that the actual innocence exception applies such that procedural default is overcome. (DN 27, at PageID # 634.) Petitioner argues that his conviction for being a "licensee" who "shall have his or her license in his or her immediate possession at all times when driving a motor vehicle" would be a miscarriage of justice since there was no evidence at trial that Petitioner had a valid operator's license from any jurisdiction at the time of the alleged offense. (DN 27, at

11

PageID #636.) However, Petitioner does not proffer any new evidence to support his claim of actual innocence, but instead Petitioner sets forth a new legal argument that could have been made at trial but for Petitioner's own apparently contradictory testimony.

Petitioner main contention in reply is that he is not in procedural default because once requested, the palpable error review is not discretionary. Petitioner argues that the right to a directed verdict is not always barred by a failure to move for a directed verdict because if a sufficiency of the evidence challenge was not properly preserved at trial, the issue is subject to review on appeal under the palpable error standard of RCr 10.26. *Commonwealth v. Jones*, 283 SW 3d 665, 668 (Ky. 2009)("An unpreserved error may be noticed on appeal only if the error is 'palpable' and 'affects the substantial rights of a party', and even then relief is appropriate only 'upon a determination that manifest injustice has resulted from the error.'") (DN 27, at PageID #631.)

Petitioner argues that in his appellate brief to the Jefferson Circuit Court he made a request for palpable error review pursuant to RCr 10.26, but that the Court did not engage in such a review. (DN 27, at PageID #632.) Respondent argues that certainly the state appellate court could have undertaken an RCr 10.26 review for palpable error, but the court declined to do so based on the evidence. (DN 14, at PageID #119, n11.)  RCr 10.26 clearly provides, "A palpable error which affects the substantial rights of a party *may* be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief *may* be granted upon a determination that manifest injustice has resulted from the error."

Petitioner cites to *Shepherd v. Commonwealth*, 251 SW 3d 309, 316 (2008) to support the proposition that palpable error review is not discretionary, however in *Shepherd* the appellate court specifically declined to address an appellant's palpable error argument because the argument was a cursory request in the reply brief, and the Court found that such a general request was inadequate to invoke palpable error review. *Shepherd* does not say that if properly invoked, the Court must always undertake the palpable error review. The undersigned finds that the clear language of RCr 10.26 provides that the application is discretionary through the use of the word "may" and that the Jefferson Circuit Court clearly chose not to apply that standard to the case before it despite Petitioner's request.

The Court does not find actual innocence sufficient to overcome Plaintiff's procedural default. Since Ayers has not met the burden for actual innocence and Ayers has not argued cause and prejudice, the Court recommends Ayers's claims under Ground I regarding the directed verdict not be considered on its merits.

**b) KRS 186.510- Erroneous Jury Instruction**

(1) <u>Procedural Default</u>

Petitioner argues that despite the language in KRS 186.510 that only a "licensee" could commit this offense, the Commonwealth's instruction, which was adopted by the Court, did not contain the word "licensee" and did not require the jury to determine factually whether Ayers was a "licensee" such that the instruction was fatally flawed. (DN 1-1, at PageID # 29.)

Respondent argues that Petitioner's claim regarding an allegedly erroneous jury instruction is also procedurally defaulted because Petitioner failed to object on the specific basis, namely that the jury instruction lacked a required element. Respondent argues that Petitioner only objected to

13

the jury instruction on the basis that it did not require a finding that he was actually driving the truck. (Trial, 10/2/14, 3:19:58-3:22:09.)

Once again, RCr 9.54(2) provides, "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection."

The Jefferson Circuit Court stated, "At trial, Ayers challenged the jury instruction to this offense on the basis of whether he had to be seen actually driving the vehicle to be charged with its violation. He failed to raise any argument about whether he could be charged with violating KRS 186.510 because he did not possess a valid driver's license from any jurisdiction and therefore could not be a 'licensee'." (DN 14-5, at PageID # 481.) In this instance, the last reasoned state-court judgment declined to reach the merits because of Petitioner's failure to comply with a state procedural rule.

(2) Cause and Prejudice or Actual Innocence

Respondent argues that Petitioner cannot demonstrate cause and prejudice to excuse the default since the jury instruction presented to the jury provided the necessary elements of the underlying crime. (DN 14, at PageID #119.) Further, Respondent argues that in Petitioner's own testimony he said he had a valid Tennessee's operator's license due to a grace period such that actual innocence cannot be shown either. (DN 14, at PageID # 119.)

In reply, Petitioner argues once again that though the giving of a fatally defective instruction was not adequately preserved, this error should nevertheless be reviewed on appeal pursuant to

RCr 10.26 for palpable error, as the error undoubtedly affected the substantial rights of appellant and resulted in a manifest injustice. Petitioner acknowledges that the Circuit Court opinion made no mention of whether the alleged error constituted palpable error or created a manifest injustice. The Court does not find this argument persuasive for the same reasoning articulated above regarding the discretion of the appellate court to not review Petitioner's case pursuant to RCr 10.26. Further, a defendant cannot rely on the palpable-error rule to complain about the absence of an instruction that was never requested or that was not objected to. *Wise v. Commonwealth of Ky.* (Ky. 2013), 422 S.W.3d 262, 276 (citing *Martin v. Commonwealth of Ky.* 409 S.W.3d 340, 346 (Ky. 2013) ("We do not expect the trial judge to anticipate a party's strategic preferences and act upon them *sua sponte*. The trial judge cannot be expected to distinguish a neglectful omission from a deliberate choice. Thus, RCr 9.54 imposes upon the party the duty to inform the trial court of its preferences regarding the giving or the failure to give a specific jury instruction. Therefore, when the allegation of instructional error is that a particular instruction should have been given but was not or that it should not have been given but was given, RCr 9.54 operates as a bar to appellate review unless the issue was fairly and adequately presented to the trial court for its initial consideration.")

Petitioner also argues the actual innocence exception to procedural default. (DN 22, at PageID #641.) Petitioner argues that as there was no evidence at trial that Petitioner had a valid driver's license from any jurisdiction at the time of the alleged offense, a jury properly instructed to determine whether Petitioner was a "licensee" would have undoubtedly returned a verdict of not guilty. (DN 27, at PageID # 641.) However, as stated above Petitioner has not proffered any new

15

evidence, much less "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial". *Schlup*, 513 U.S. at 324.

The Court does not find actual innocence sufficient to overcome Plaintiff's procedural default. Since Ayers has not met his burden to show actual innocence and Ayers has not argued cause and prejudice, the Court recommends Ayers's claims under Ground I regarding the jury instructions not be considered on their merits.

### C.  Ground II: Criminal Trespass in the Third Degree

In his second ground, Petitioner makes two arguments concerning his conviction for trespass in the third degree. First, that the state trial court improperly denied his motion for a directed verdict of acquittal.  (DN 1-1, at PageID #34.) Second, Petitioner argues that the trial court erred in refusing to instruct on a statutory defense in KRS 511.090(4). (DN 1-1, at PageID #35.)

KRS 511.080 provides that "a person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises."

KRS 511.090(1) provides, "A person 'enters or remains unlawfully' in or upon premises when he is not privileged or licensed to do so."

KRS 511.090(4) provides, "A person who enters or remains upon unimproved and apparently unused land which is neither fenced nor otherwise enclosed does not commit criminal trespass unless notice against trespass is personally communicated to him by the owner of the land or some other authorized person or unless notice is given by posting in a conspicuous manner."

### 1.  Directed Verdict on KRS 511.090(4)

Petitioner argues that a directed verdict of acquittal was mandated when sought at the conclusion of the prosecution's case and the close of evidence, but that the trial court denied

16

Ayers's directed verdict motions despite uncontroverted evidence that KRS 511.090(4) precluded Ayers from committing third degree criminal trespass. (DN 27, at PageID #643.)

Petitioner argues that KRS 511.090(4) is not an affirmative defense as it is not designated a "defense," and instead once the factual predicate is established by the evidence at trial KRS 511.090(4) becomes an element of the offense of criminal trespass in the third degree, which the prosecution must disprove beyond a reasonable doubt. (DN 1-1, at PageID # 36.) Petitioner makes this argument based on KRS 500.070(1) which provides,

> The Commonwealth has the burden of proving every element of the case beyond a reasonable doubt, except as provided in subsection (3). This provision, however, does not require disproof of any element that is entitled a "defense," as that term is used in this code, unless the evidence tending to support the defense is of such probative force that in the absence of countervailing evidence the defendant would be entitled to a directed verdict of acquittal.

KRS 500.070(3) provides, "The defendant has the burden of proving an element of a case only if the statute which contains that element provides that the defendant may prove such element in exculpation of his conduct."

Petitioner argues that the factual predicate excepting entering or remaining on unimproved and apparently unused land contained in KRS 511.090(4) was established by all the evidence such that a directed verdict of acquittal was mandated when sought. (DN 1-1, at PageID #40.) Petitioner argues that the evidence supporting KRS 511.090(4) is that the land was neither fenced nor otherwise enclosed; no "no trespassing" signs were posted; the land was apparently unimproved; the land was apparently unused; no buildings, vehicles, picnic tables or other objects were on the lot during the time Ayers was there; neither the owner of the land nor any authorized person communicated to Ayers notice of trespass; and no evidence established that police officers were authorized to communicate notice of trespass to Ayers as they could not see any evidence on the

17

land in question that any person entering or remaining on the land would be trespassing.(DN 1-1, at PageID # 37.) Petitioner argues that the prosecution must disprove beyond a reasonable doubt the exception to third degree criminal trespass contained in KRS 511.090(4) as an element of the offense. (*Id*.)

Petitioner argues that the lack of evidence to rebut the exemption of KRS 511.090(4) resulted in a violation of the "no evidence" doctrine of *Thompson v. Louisville*, 362 US 199, 206 (1960), and/or the "no rational trier of fact" doctrine of *Jackson v. Virginia*, 443 US 307, 314 (1979), such that the state court decisions were contrary to or involved an unreasonable application of clearly established Federal law. (DN 1-1, at PageID # 42.)

Though the parties disagree about the applicability of *Thompson*, the Court in *Jackson* addressed what standard is to be applied in a federal habeas corpus proceeding when the claim is made that a person has been convicted in a state court upon insufficient evidence. *Jackson* at 309. The Supreme Court acknowledged that in *Thompson*, "a conviction based upon a record wholly devoid of any relevant evidence of a crucial element of the offense charged is constitutionally infirm"[1] however, the Supreme Court went on to explicitly say, "[t]hat the *Thompson* 'no evidence' rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt is readily apparent…The *Thompson* doctrine simply fails to supply a workable or even a predictable standard for determining whether the due process command of *Winship* has been honored." *Jackson* at 320. In *Winship*, the Court held for the first time that the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

---

[1] *Jackson* at 314.

18

which he is charged." *Jackson* at 315 (*citing In re Winship*, 397 U.S. 358, 364 (1970)). Accordingly, this Court uses the standard set forth in *Jackson* as prevailing law. The Supreme Court held that in a challenge to a state criminal conviction brought under 28 U.S.C. §2254, the applicant is entitled to habeas corpus relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson* at 323.

Respondent argues that Petitioner presented his unimproved premises defense to the state trial court during his motions for directed verdicts of acquittal. (Trial, 10/2/14, 2:07:07-2:10:10, 3:35:11-3:35:43.) Respondent argues that the Jefferson Circuit Court found no evidence had been presented to support an unimproved premises defense. (DN 14, at PageID #122.) Respondent argues that the refusal of the state appellate court to find error in the denial of the directed verdict motions was not contrary to or an unreasonable application of the "no rational trier of fact" doctrine in *Jackson v. Virginia*, 443 U.S. 307 (1979). (DN 14, at PageID # 122.)

Respondent argues the evidence showed that the lot was not "unimproved and apparently unused land" since the owner testified that it was used by his adjacent business as a break area for employees and a parking area for trucks. (Trial 10/1/14, 1:43:40-1:48:05.) Further, Petitioner testified he had seen tractor-trailers and cars parked on the lot before and presumed the people parking there were employees for the adjacent factory. (Trial, 10/2/14, 2:50:35-2:53:40.) Petitioner conceded that he did not know to whom the property belonged. (Trial, 10/2/14, 2:57:20-2:57:58.)

 In reply, Petitioner argues that a direct verdict was mandated at the close of evidence because the evidence showed that the lot was not "unimproved and apparently unused land." (DN 27, at PageID #643.) Petitioner argues that he was not on the lot in question during normal business

hours, but rather around midnight, and that there was evidence that the land in question was empty and deserted when Ayers drove onto it. (DN 27, at PageID #643.) Petitioner argues that no evidence was introduced that the concrete slab was easily visible in the dark to anyone entering onto the lot. (DN 27, at PageID #644.) Petitioner argues that the woman who lived across the street from the parcel described it as a "vacant lot". (DN 27, at PageID #644; Trial 10/1/14, 1:54:40, 2:05:18-2:06:10.)

In addressing the Jefferson Circuit Court's finding that Ayers has not proffered evidence or testimony to overcome the factual determination that he refused to leave the property after being notified he had no legal right to be on the premises, Ayers argues that there was no evidence at trial that the police were able to determine that the land was not "unimproved and apparently unused" such that the officers had no authority to order Ayers to leave the property as there was no evidence he was trespassing. (DN 27, at PageID #646.) Further Ayers argues that the officers were not authorized to order Ayers to leave the lot or to provide notice against trespassing. (DN 27, at PageID #647.)

Though the Jefferson Circuit Court did not clearly distinguish between Petitioner's argument regarding the directed verdict and the argument regarding the jury instructions, the Circuit Court stated,

> Under KRS 511.080(1), a person commits trespass in the third degree when he 'knowingly enters or remains unlawfully in or upon premises.' On the night of Ayers' arrest, the lot was not enclosed by a fence or similar deterrent. Ayers argues there was no "No Trespassing" signage, while the police officer testified a sign was not posted at the exact location of Ayers' truck, but there was one further down the block. The owner of the lot testified that on occasion picnic tables would be placed on it for the employees of the manufacturing facility next to the lot to use on breaks. Trucks would also park there, sometimes for several days. These are all actions taken either by the owner of the property or with the owners' [sic] knowledge and permission.

20

>Ayers correctly argues that KRS 511.090(4) provides a defense to criminal trespassing on 'unimproved and apparently unused land which is neither fenced nor otherwise enclosed…unless notice against trespass is personally communicated to him by the owner of the land or some other authorized person or unless notice is given by posting in a conspicuous manner.' While the condition of the lot, including whether it was improved or enclosed, and the presence of conspicuous notice are questions of fact for the jury to determine in applying the defense, Ayers has proffered no evidence to address the exception to the conspicuous notice requirement: personal communication by the property owner or other authorized person. Ayers never alleged he had permission of the property owner to be on the lot. However, the police have the authority to ask unauthorized persons to leave an area.

(DN 14-5, at PageID #479-480.) Reading the excerpt above, the Jefferson Circuit Court did not find KRS 511.090(4) to apply based on the language of the statute because notice against trespass was personally communicated to Ayers by the police, and Ayers refused to leave the premises. *See Helms v. Zubaty*, 495 F.3d 252, 259 (6th Cir. 2007) (finding that the undisputed evidence established that the defendant received and refused several requests to leave the premises by the police before she was arrested for trespassing). State court determinations of fact are entitled to a presumption of correctness which Petitioner had the burden of rebutting with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Petitioner fell far short of rebutting the presumption of correctness in this case.

The undersigned finds the Jefferson Circuit Court's decision to uphold the trial court's decision not to grant a directed verdict based on KRS 511.090(4) was not contrary to or involve an unreasonable application of clearly established Federal law articulated in *Jackson* given that a rational trier of fact could have found proof of guilt beyond a reasonable doubt by relying upon the trial testimony. 28 U.S.C. §2254(d)(1). Lastly, the undersigned finds that the State Court's conclusion was not an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding based on the testimony proffered. 28 U.S.C. §2254(d)(2).

Based on the forgoing, this Court recommends that petitioner is not entitled to federal habeas corpus relief with respect to Ground II regarding the directed verdict.

### 2. Jury Instruction on KRS 511.090(4)

Petitioner contends that he should have been entitled to a jury instruction on the "unimproved and apparently unused land" defense in KRS 511.090(4).   (DN 1-1, at PageID #42). Petitioner argues this error resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. (DN 1-1, at PageID #43.) Petitioner argues that the trial judge based her decision not to instruct on KRS 511.090(4) on the presence of a parking spot, but this was incorrect because there was sufficient evidence that there were no apparent prohibitions against intrusion. (DN 1-1, at PageID #43-44.) Petitioner argues that neither the trial judge's opinion nor the prosecutor's belief that the land was not "unimproved land and apparently unused land" can justify the denial of the instruction in view of all of the evidence indicating that the elements of the exception were supported by evidence. (DN 1-1, at PageID #43.) Petitioner argues the jury instructions violated due process since the State must prove every element of the offense, including KRS 511.090(4).

"[I]n a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil,* 541 U.S. 433, 437 (2004). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is 'whether the ailing instruction…so infected the entire trial that the resulting conviction violates due process.'" *Id.* (quoting *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).) "A jury

22

instruction that omits an element of the offense" is a violation of federal constitution law. *Neder v. United States*, 527 U.S. 1, 8-9 (1999).

Respondent argues that here, the evidence did not support a finding that the land was "unimproved and apparently unused" based on the owner's testimony and Petitioner's own testimony that the lot was used as a parking area. (DN 14, at PageID # 125.)

In reply, Petitioner argues that the refusal upon request to instruct on KRS 511.090(4) also violated clearly established federal law as stated in *Neder v. United States*, 527 U.S. 1, 8-9 (1999). (DN 27, at PageID #650.)

For purposes of habeas corpus review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. §2254(e)(1). This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial records. *Sumner v. Mata*, 449 U.S. 539, 546-547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). To warrant habeas relief because of incorrect jury instructions, Petitioner must show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair. *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000) (citing *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475.  Allegations of "trial error" raised in challenges to jury instructions are also reviewed under *Brecht's* harmless error standard.  *Mitzel v. Tate,* 267 F.3d 524, 536 (6th Cir. 2001) (citing *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir.)) Under *Brecht*, Petitioner is not entitled to relief based on a constitutional error at trial unless they can establish that the error resulted in 'actual prejudice.' *Brecht*, 507 U.S. 619, 637 (1993).  "[A]n error requires

reversal only if it had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 631.

The Jefferson Circuit Court explicitly addressed the issue of the propriety of a KRS 511.090(4). The Jefferson Circuit Court stated, "Ayers argues it was reversible error to not permit the defense of KRS 511.090(4) be presented to the jury in the instructions…Ayers has no proffered evidence or testimony to overcome the factual determination that he refused to leave the property after being notified he had no legal right to be on the premises. At trial, he failed to present that issue as a question of fact for the jury's deliberation. As a result, it was not error for the trial court to deny his request to have an instruction for KRS 511.090(4) included." (DN 14-5, at PageID #480.)

The Jefferson Circuit Court based its decision that the instruction was not improper based on factual determinations derived from the trial record. Petitioner has not brought forth any clear and convincing evidence that the state court's findings were erroneous. *Neder* and *Middleton* do not control if there is no basis upon which to overcome the state court's factual findings that there was insufficient evidence to support the KRS 511.090(4) instruction. Accordingly, there was not a contrary to or an unreasonable application of *Neder*. 28 U.S.C. §2254(d)(1). Given Petitioner's refusal to leave the property after being notified he had no legal right to be on the premises, the undersigned cannot state that the Jefferson Circuit Court's decision that the evidence did not support KRS 511.090(4) decision was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. 28 U.S.C. §2254(d)(2).

Accordingly, this Court recommends that petitioner is not entitled to federal habeas corpus relief with respect to Ground II regarding the jury instructions.

**D.  Ground III: Mandatory Preemptory Jury Instruction**

**1.  De Novo Review**

Petitioner argues that the mandatory preemptory instruction claim was presented to the state appellate court and was not explicitly or implicitly adjudicated by that court such that *de novo* review is appropriate. (DN 27, at PageID # 659.)

A state court need not cite or even be aware of Supreme Court cases under §2254(d) so long as neither the reasoning nor the result of the state-court decision contradicts them. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362 (2002).  "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits-- but that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). "A judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court… heard and evaluated the evidence and the parties' substantive arguments." *Id.* at 302. "If a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter…When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, §2254(d) entitles the prisoner to an unencumbered opportunity to make his case before a federal judge." *Id.* at 303.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely. *Harrington v. Richter*, 562 U.S. 86, 99 (2011) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). "If the state court did not assess the merits of a claim properly raised in a habeas petition,

the deference due under AEDPA does not apply. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

Petitioner set forth his federal claim regarding the Fourteenth Amendment in his appellate brief to the Jefferson Circuit Court. (DN 14-4, at PageID #281.)  The Order from the Jefferson Circuit Court reads verbatim as follows,

> Ayers' first trial ended in a mistrial on October 3, 2012.  At a hearing outside the presence of the jury, China testified that he was the prostitute and the details of his encounter with Ayers before the arrival of the police.  Judge Ann Bailey Smith presided over both of Ayers' trials. Before the second trial, counsel for Ayers argued the Loitering for Prostitution Purposes should be dismissed as Ayers was the patron, not the prostitute.  The prosecutor also moved to amend the Loitering charge to Complicity, KRS 529.020.  The Court denied both motions.  After China presented to the jury the graphic details of his transaction with Ayers, the Court granted Ayers' Motion for a Directed Verdict and dismissed the loitering charge….
>
> At the October 2013 trial that ended in a mistrial, China testified under oath that he was the prostitute and Ayers was the patron on the evening of June 11, 2012.  The Commonwealth consistently agreed with that scenario.  Prior to the second trial, Ayers moved to dismiss the charge because under KRS 529.080(1), only the prostitute can be charged with the offense.  The judge, who had also presided over the previous trial, denied the motion and allowed the Commonwealth to present China's testimony.  The trial judge commented that "we will see how the facts line up with the law" even though the facts were not in dispute.  After the Commonwealth presented its case, Ayers moved for a directed verdict on this charge.  The Commonwealth argued that KRS 529.080 is broader in scope than KRS 529.020, which prohibits a patron from being charged with prostitution in the commentary to the statute.  In granting Ayers' motion, the trial court agreed that loitering for prostitution purposes was aimed at the behavior of the prostitute, not the patron.  If patronizing a prostitute is not considered prostitution under KRS 529.020, then the patron cannot loiter for prostitution purposes under KRS 529.080.
>
> Although a directed verdict was properly rendered in favor of Ayers, the trial judge *erred* by allowing the testimony of China regarding the interaction with Ayers, when as a matter of law Ayers could not be convicted of the charged offense.  Ayers argues the jury was prejudiced against him as a result, tainting the jury's verdict on the other two charges.  For the reasons discussed further below, the Court disagrees."

(DN 14-5, at PageID # 478-479) (*emphasis added*). However, no discussion of the allegedly prejudicial effect of China's testimony followed and the appellate court went on

26

to address the other arguments Ayers set forth on appeal.  In fact, the only reference to Ayers's arguments regarding prejudice beside the plain assertion that the Court disagrees the jury was prejudiced against Ayers is included in Section II regarding Third Degree Trespass wherein the Circuit Court stated, "He claims the jury was unfairly prejudiced against him due to the testimony of China, which had no relevance to the criminal trespass charge." (DN 14-5, at PageID #480.)

Petitioner argues in reply that the failure of the state appeals court to discuss its reasons is an indication that this claim was not ruled on the merits through the Court's inadvertence. (DN 27, at PageID #659.) Petitioner argues that the presumption that the claim was reviewed on the merits was rebutted and the claim is entitled to be reviewed *de novo*.

The undersigned finds that the Jefferson Circuit Court failed to cite to a standard, which is not required, but that the Court also failed to perform any analysis addressing Petitioner's arguments regarding the prejudicial effect of China's testimony after explicitly finding the testimony was allowed in error and stating that it would provide reasons for its' determination that the erroneous testimony was not prejudicial.

Accordingly, the undersigned conducts a *de novo* review of the Petitioner's Fourteenth Amendment claim pursuant to pre-ADEPA standards.

### 2. Limiting Instruction

Petitioner argues that after jury selection concluded, Ayers moved the court to dismiss the charge of loitering for prostitution purposes under KRS 529.080, because according to the sworn testimony provided by the Commonwealth at the mistrial, Ayers was the patron and therefore could

not be guilty of the offense of loitering for purposes of prostitution[2]. (DN 1-1, at PageID # 47; Trial 10/1/14 at 12:04:38-12:13.). Ayers stated he would be greatly prejudiced if the loitering for purposes of prostitution charge was presented to the jury.  (Trial 10/1/14, at 12:12:16.)  The trial judge denied the motion to dismiss but stated the judge would likely agree with Mr. Ayer's interpretation of the statute. (Trial 10/1/14, 1:25:22-1:27:17). At the conclusion of the Commonwealth's case, Ayers moved for a directed verdict of not guilty on the charge of loitering for purposes of prostitution and the trial court granted the motion. (Trial, 10/2/14, 2:11:49-2:24:39.)

Petitioner alleges that the state trial court committed constitutional error when it failed to give a mandatory preemptory instruction to the jury after it granted a directed verdict on the loitering for the purpose of prostitution charge. (DN 1, at PageID #8.) Petitioner argues that despite the jury having been told that Ayers was charged with loitering for purposes of prostitution and the jury having heard all of the Commonwealth's evidence on that charge, the trial judge when asked by the prosecutor how the Court would address the directed verdict to the jury the trial judge replied, "I don't, I won't". (Trial 10/2/14, 2:36:26-2:23:31.) Petitioner claims that as a result, the jury was given no instruction that Ayers had been found not guilty of the charge of loitering for prostitution purposes, and that the charge had been dismissed. (DN 1, p7 of 37.) Petitioner argues that the jury heard testimony that Ayers agreed to pay a prostitute for oral sex; the prostitute was a man; Ayers did not climax during the oral sex; and that Ayers had not paid the twenty dollars agreed upon for the oral sex. (DN 1-1, at PageID # 49; Trial 10/1/14: 3:50:59-3:56:19.) Petitioner argues that the

---

[2] The Court uses the term "prostitution" as that is the language used in KRS 529.080.

jury was allowed to use all of this evidence regarding Ayers's sexual counter in deciding the two other charges and such testimony without instruction was prejudicial. (DN 1-1, at PageID# 51.)

Petitioner argues that Kentucky law mandates the trial court to *sua sponte* instruct the jury that the evidence failed to prove the charged offense regardless that the defendant did not request it. *Sizemore v. Commonwealth*, 147 S.W. 2nd 56, 59 (Ky. 1941). The Court in *Sizemore* stated,"[I]n a criminal prosecution it is the duty of the Court to give all instructions that the testimony authorizes from any viewpoint, whether the defendant asked for them or not.  Under that rule it was the duty of the Court to give a peremptory instruction regardless of the fact that defendant did not request it."

In *Sizemore*, Defendant was convicted of a statute providing that, "no roadhouse or place offering for sale nonintoxicating, or intoxicating drinks, tourist camps or place of public entertainment at which people assemble to eat, drink, dance, bathe or engage in any game or entertainment, shall be permitted in the Commonwealth of Kentucky outside of the corporate limits of any incorporated city or town unless its owner or proprietor shall have a permit issued to him by the county court in the county in which it is located granting to him the privilege and license to operate said place of business in said county." *Id.* at 57. The Court of Appeals reversed the conviction given that the location of the business to which the statute applied was an essential element of the offense and there was no testimony at trial bearing on the forfeiture of charter privileges by the town where Defendant's business was located. The Court of Appeal stated that since one of the "essential elements to establish guilt of the defendant was wholly and entirely unproven, it was the duty of the court to so instruct the jury, and for its failure to do so the judgment will have to be reversed." *Id.* at 58.

Further, Petitioner cites to *Fugate v. Commonwealth*, 445 S.W. 2d 675 (Ky. Ct. App. 1969), which has been subsequently overruled, but also cites *Sizemore* for the proposition that it is the duty of the trial court to give a peremptory instruction when the evidence does not prove an offense. *Sizemore* and *Fugate* are not dispositive here though since Petitioner's argument for a limiting instruction does not involve a complete lack of evidence of an essential element to establish guilt of a crime that the defendant was ultimately convicted of.

Petitioner argues that the failure of the trial judge to inform the jury that the Court found the criminal defendant not guilty of one of the three offenses the defendant faced undoubtedly undermined the fairness of the factfinding process in violation of *Estelle v. Williams*, 425 U.S. 501 (1976) and the presumption of innocence. (DN 1-1, at PageID #50.) Petitioner argues that the Circuit Court failed to extend the Supreme Court precedent in *Estelle v. Williams* to the District Court's failure to inform the jury of the directed verdict with regard to the loitering for prostitution purposes.

The portion of *Estelle* that Petitioner cites to in his brief is as follows,

> The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice…To implement the presumption, courts must be alert to factors that may undermine the fairness of the factfinding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.

*Estelle v. Williams*, 425 U.S. 501, 503 (1976). The Supreme Court in *Estelle* found that it is a violation of the Fourteenth Amendment for the State to compel an accused to stand trial before a jury while dressed in identifiable prison clothes, but that the failure to make an objection to the

court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation. *Id.* at 512-513.

Respondent argues that the state trial court could not consider extrajudicial knowledge from a prior mistrial before the second trial. *Commonwealth v. Hayden*, 489 S.W.2d 513, 516 (Ky. 1972) ("There is no authority for the use of summary judgment procedure in criminal prosecution, and it is our opinion that the evidence could not properly be considered on the motions to dismiss.") (DN 14, at PageID #126 n.14.)

Respondent also argues that the state trial court was under no obligation to issue any *sua sponte* "mandatory peremptory instruction" to the jury under state law. *See* RCr 9.54(2); *Martin v. Commonwealth*, 409 S.W.3d 340, 345 (Ky. 2013); *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 30 (Ky. 2011)("Trial counsel knows best whether a limiting instruction will be beneficial, given what the jury has heard or will hear in the course of trial. Thus, Kentucky precedent leaves that important judgment call squarely within the trial counsel's sound discretion by recognizing the concept of waiver. If a limiting instruction is advisable, trial counsel is now well informed of the requirement to ask for one.")(DN 14, at PageID #128.)

Respondent argues that *Sizemore* is not dispositive since it addresses peremptory instructions prior to the modern directed verdict as codified in CR 50.01. (DN 14, at PageID # 129.) Respondent relies on a footnote in *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 898, n22 (Ky. 2013) to support this argument. The footnote provides, "A peremptory instruction is no longer a part of our civil practice. Granting a motion for a peremptory instruction involves giving an instruction to a jury in which it is stated that if the jury agrees with the facts presented, they must find for the party who moved for the instruction. Today, directed verdict would be

analogous to a peremptory instruction." *Id.* Given the definition of peremptory instruction provided in *Dick's Sporting Goods, Inc.*, the undersigned believes that a peremptory instruction and a limiting instruction are very different tools of procedure, though Petitioner appears to use them interchangeably.

In reply, Petitioner argues that the Respondent's reliance on *Dick's Sporting Goods, Inc. v. Webb,* is faulty because it does not address the mandatory obligation of a trial judge in a criminal case, after directing a verdict of not guilty on one or more counts, to give *sua sponte* a preemptory instruction to the jury advising them that the court has entered a finding of not guilty on the charge or charges in question. (DN 27, at PageID #655.) However, Ayers does not cite to dispositive authority for this proposition beyond *Sizemore*, discussed *supra*. Ayers argues that although the instructions given to the jury precluded a verdict of guilty on the charge of loitering for purposes of prostitution, the jurors remained free to utilize the evidence introduced in support of that charge to pollute their decisions on the other two charges--third degree burglary and license to be in possession--because the evidence was graphic, inflammatory, and irrelevant. (DN 27, at PageID # 656.)

In a habeas corpus action on *de novo* review, where the petitioner alleges constitutional error due to the trial court's refusal to allow a defense instruction, the constitutional question is limited to whether the petitioner sufficiently alleges a "fundamental defect which inherently results in a complete miscarriage of justice." *U.S. ex. rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir. 1979); *Hill v. United States*, 368 U.S. 424, 428 (1962). By raising this issue in a federal habeas corpus petition, the burden on Petitioner is especially heavy because an omission of a jury instruction is less likely to be prejudicial than a misstatement of law. *U.S. ex. rel. Stamps v. Hartigan*, 586

F.Supp. 1575, 1577 (N.D. Ill. 1984) (quoting *Peery*, 615 F.2d at 404). If Defendant had in fact asked for a limiting instruction, then the question before this Court would be whether the omission of a jury instruction by itself so infected the entire trial that the resulting conviction violated due process under the fourteenth amendment. *Id.*

However, unlike the defendant in *Peery*, the Petitioner did not ask for a limiting instruction regarding China's testimony or object to the trial court's decision not to address the directed verdict with the jury. (Trial 10/2/14, 2:36:26-2:23:31; DN 14-3, at PageID #227; DN 14-3, at PageID #165-170.) Thus, the failure of the Court to provide a limiting instruction was not "a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure" given that Petitioner did not avail himself of proper procedures pursuant to Kentucky law. *See Hill v. U.S.,* 368 U.S. 424, 428.

Further, the lack of a jury instruction did not affect the State's burden to prove every element of the crime beyond a reasonable doubt. As provided by the Supreme Court in *In re Winship,* 397 U.S. 358, 364 (1970), there is a due process requirement that the prosecution prove beyond a reasonable doubt every fact necessary to constitute the crime charged.

Further, the lack of a jury instruction regarding China's testimony did not affect the presumption of innocence in the instant case. The presumption of innocence was implicated in *Sandstrom v. Montana,* 442 U.S. 510, 524 (1979), wherein the Supreme Court addressed a defective jury instruction and found that because the jury, which was instructed that the law presumes a person intends the ordinary consequences of his voluntary acts, may have interpreted the presumption as conclusive or as shifting the burden of persuasion. The Supreme Court found that because either interpretation would have violated the Fourteenth Amendment's requirement

that the state prove every element of a criminal offense beyond a reasonable doubt, the instruction given was unconstitutional. *Id.* The Supreme Court stated that, "a conclusive presumption in this case would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime and would invade the factfinding function which in a criminal case the law assigns solely to the jury." *Id*. at 523. In contrast, at issue in the instant case is not a defective instruction but an allegedly erroneous presumption created by the lack of an instruction.

Petitioner's argument relies on *Estelle v. Williams,* 425 U.S. 501, 503 (1976) such that a discussion of the facts in *Estelle v. Williams* is pertinent here. (DN 1-1, at PageID #49.) In *Estelle v. Williams*, a defendant appeared for trial in clothes that were distinctly marked as prison issue, but neither respondent nor his counsel raised an objection to the prison attire at any time despite being fully conscious of the situation. *Id.* at 502. A jury returned a verdict of guilty against the defendant. *Id.* at 503. A violation of the presumption of innocence was raised in *Estelle v. Williams* due to the potential effect of presenting an accused before the jury in prison attire, however the Supreme Court found nothing in the record to warrant a conclusion that defendant was compelled to stand trial in jail clothing such that a constitutional violation occurred. *Id*. at 512. In the instant case, Petitioner does not set forth an argument of how the presumption of innocence was implicated by China's testimony. Further, the trial court did explicitly issue an instruction regarding the presumption of innocence. (DN 14-3, at PageID #169.)

In the context of testimony pertaining to uncharged crimes, Courts have looked to limiting instructions as a way to mitigate against constitutional violations. *See Hogan v. West*, 448 F.Supp.2d 496, 515 (W.D.N.Y. 2006)("A Court normally presumes that a jury will follow an

34

instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions, *Richardson v. Marsh,* 481 U.S. 200, 208 (1987), and a strong likelihood that the effect of the evidence would be 'devastating to the defendant.' *Bruton v. United States*, 391 U.S. 123, 136 (1968).") However, in this instance the testimony provided was regarding a crime that was in fact charged such that this analysis is not applicable to Petitioner's case either.

The undersigned finds that Petitioner did not ask for an instruction pursuant to RCr 9.54 and that a *sua sponte* limiting instruction is not required under Kentucky State law in the facts before the undersigned such that the failure of the trial judge to provide a *sua sponte* instruction was not a violation of Petitioner's Fourteenth Amendment right to a fair trial.  Based on the foregoing, the undersigned recommends that Petitioner is not entitled to federal habeas corpus relief with respect to Ground III.

### E.  Evidentiary Hearing and Discovery

""Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'" *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting, in part, *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir.1994)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief…[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Black v. Carpenter*, 866 F.3d 734, 742 (6th Cir.

2017).  A habeas court may grant leave to conduct discovery only for good cause. Section 2254 Rule 6(a).

Petitioner has not asked for an evidentiary hearing in his brief.  The undersigned, in the exercise of discretion, recommends that such a hearing is neither required nor warranted under Rule 8 of the Rules Governing §2254 Cases.  The state court record as it presently exists is more than sufficient for the Court to thoroughly address the claims asserted in the petition.  Further, Petitioner does not specify what facts would be established by an evidentiary hearing and how they might entitle him to relief. *See Williams v. Bagley*, 380 F.3d 932, 977 (6th Cir. 2004).  Therefore, the undersigned recommends that an evidentiary hearing is unwarranted.

### F.  Certificate of Appealability

A certificate of appealability may be issued to a habeas petitioner seeking to vacate his or her conviction only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §2253(c)(2).  That "demonstration…includes showing that reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  When a claim is denied on procedural grounds, the applicant must additionally show "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

The undersigned recommends a certificate of appealability be issued for Ground III given that Petitioner's third ground made a substantial showing of the denial constitutional right provided by

the Fourteenth Amendment, and that reasonable jurists could debate whether the petition should have been resolved in a different manner.

The undersigned does not recommend a certificate of appealability for Ground II, as Ayers did not make a substantial showing of the denial of a constitutional right.

The undersigned does not recommend a certificate of appealability for Ground I since the claims in Ground I were procedurally defaulted and Ayers did not show actual innocence such that a reasonable juror could not conclude the recommendation was incorrect. *See Slack*, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted.")

## IV.    RECOMMENDATION

(1) For the foregoing reasons, the undersigned recommends that the petition be **DENIED** in full.

(2) The undersigned further recommends that a Certificate of Appealability be **DENIED** as to Grounds I and II but **GRANTED** for Ground III.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1)(B)-(C), the above-signed Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. §636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.*; *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

March 20, 2020

Colin H Lindsay, Magistrate Judge
United States District Court