UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00684-GNS-CHL

WILLIAM OTTO AYERS                                                        PETITIONER

v.

JOHNATHAN HALL, et al.                                                   RESPONDENTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Petitioner's Objection (DN 40) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation ("R&R") (DN 35).  This matter is now ripe for adjudication.  For the reasons that follow, the Magistrate Judge's R&R is **ADOPTED**, Petitioner's Objection is **OVERRULED**, and Petitioner's Petition for Writ of Habeas Corpus (DN 1) is **DISMISSED WITH PREJUDICE**.

### I.      BACKGROUND

#### A.      Statement of Facts

On June 11, 2012, police were called regarding a vehicle parked in a vacant lot in Louisville, Kentucky.  (R&R 2, DN 35).  Upon approaching the lot, the police officers noticed a known prostitute leaving the area.  (R&R 2).  The officers then encountered Petitioner William Otto Ayers ("Ayers"), who was in a state of partial undress and who could not provide a driver's license.  (R&R 2).  The officers informed Ayers that he could walk away from the location, call someone to pick him up, or ride with the officers to his destination of choice—all options that Ayers appears to have declined.  (R&R 2).  Ayers was subsequently arrested and charged in *Commonwealth v. William O. Ayers*, Jefferson District Court, No. 12-M-13071, with three counts: (1) criminal trespass in the third degree, KRS 511.080; (2) loitering for prostitution purposes, KRS 529.080; and (3) license to be in possession and to be shown on demand, KRS 186.510.  (R&R 1).

1

For reasons which are unclear, Ayers' first trial before the Jefferson District Court ended in a mistrial.  (R&R 2).  At a hearing outside of the presence of the jury, the prostitute from the night in question testified in detail about the sexual encounter with Ayers, noting specifically that Ayers was a patron rather than a prostitute.  (R&R 2).  Ayers then moved to dismiss the prostitution charge contending that KRS 529.080 did not apply to him because he was the patron of a prostitute, not a prostitute.  (R&R 2).  The Jefferson District Court denied this motion and allowed the three charges to proceed to a second trial.  (R&R 2).  At the second trial, the prostitute again relayed the graphic details of the encounter with Ayers, this time before the jury.  (R&R 2).  The Jefferson District Court ultimately granted a directed verdict of not guilty on the loitering for prostitution charge and turned the other two charges over to the jury.  (R&R 2).  The jury found Ayers guilty on the other two counts, and, on November 13, 2014, Ayers was sentenced to 90 days confinement followed by two years of conditional discharge.[1]

Ayers then directly appealed his case to the Jefferson Circuit Court, which rejected each of his arguments and affirmed the judgment and conviction of the Jefferson District Court.  (R&R 2-3).  Notably, although Ayers requested palpable error review of his license in possession conviction, the Jefferson Circuit Court affirmed without explicitly conducting this review pursuant to Ky. R. Crim. P. 10.26 [hereinafter RCr].  (R&R 12).  Both the Kentucky Court of Appeals and the Kentucky Supreme Court subsequently denied Ayers' requests for discretionary review.  (R&R 3).

---

[1] These facts were thoroughly outlined by the Jefferson Circuit Court's decision, which is available at DN 14-5 at 100-01.

B.     **Procedural History**

On November 15, 2017, Ayers initiated this Petition for Writ of Habeas Corpus under 28

U.S.C. § 2254 raising three distinct grounds for relief:

> (1) that the state trial court violated his constitutional rights when it denied his
> motion for a directed verdict when the evidence of record established Ayers was
> not a licensee, a requisite element of violating KRS 186.510 and the instruction to
> the jury did not require the jury to find Ayers was a licensee to find him guilty; (2)
> the state trial court denied him due process of law when it denied both of Ayers's
> directed verdict motions on third degree criminal trespass and then refused to
> instruct the jury on the exception to the third degree criminal trespass contained in
> KRS 511.090(4); and (3) the state trial court denied Ayers due process of law when
> after evidence of the charge of loitering for prostitution purposes was presented to
> the jury, the trial court granted a directed verdict as a matter of law, but then failed
> to give a mandatory preemptory [*sic*] jury instruction that Ayers was not guilty of
> the charge of loitering for prostitution purposes.

(R&R 5-6; Pet'r's Writ Habeas Corpus 6-11).  The Magistrate Judge thoroughly reviewed these

grounds for relief and recommended denial of habeas relief on all three grounds raised.  (R&R 6-

35).  Finally, the Magistrate Judge recommended that a certificate of appealability be denied for

Grounds I and II but granted as to Ground III.  (R&R 36-37).  On June 22, 2020, Ayers filed a 92-

page objection requesting that this Court reject nearly every aspect of the Magistrate Judge's

findings and recommendations.  (Pet'r's Obj. R&R 92, DN 40).[2]

## II.     <u>JURISDICTION</u>

This Court has jurisdiction to "entertain an application for a writ of habeas corpus in behalf

of a person in custody pursuant to the judgment of a State court" pursuant to 28 U.S.C. § 2254(a).

A jurisdictional prerequisite to entertaining a writ of habeas corpus is that the petitioner must be

"in custody."  28 U.S.C. § 2254.  As clarified by Ayers, he was still under conditional discharge

when he filed the present petition, which satisfies the jurisdictional "in custody" requirement of

---

[2] Ayers also filed a document making several minor amendments to his objection, none of which
alter its substance.  (Pet'r's Am. Doc., DN 41).

Section 2254.  (Pet'r's Mem. Supp. Writ Habeas Corpus 3 n.4, DN 1-1); *see generally Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985); *Sibron v. New York*, 392 U.S. 40, 55-57 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

## III.   STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts.  *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "difficult to meet and highly deferential standard . . . ."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted) (internal citation omitted) (citation omitted).  Legal conclusions made by state courts are also given substantial deference under AEDPA.  The Supreme Court has concluded that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

When reviewing a magistrate judge's report and recommendation regarding a prisoner's petition for a writ of habeas corpus, "[a] judge . . . shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).  A reexamination of the same argument that was presented to the Magistrate Judge without specific objections "wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error."  (internal quotation marks omitted) (citation omitted)). New arguments raised for the first time in a petitioner's objection to a magistrate judge's report and recommendation are considered waived.  *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).  Courts have applied this general rule in the habeas corpus context.  *See Brewer v. Bottom*, No. 10-26-KSF, 2012 WL 404878, at *8 (E.D. Ky. Feb. 8, 2012) (rejecting the petitioner's claim in habeas petition raised for the first time in objections to the report and recommendation and noting that "[t]hese reasons alone are sufficient grounds to reject [the petitioner's] objection.").

## IV.   DISCUSSION

### A.   Ground I:  Directed Verdict and Jury Instructions Regarding Ayers' Status as a Licensee under KRS 186.510

Ayers' first ground for relief takes issue with his conviction for failing to have a driver's license in his possession while operating a motor vehicle pursuant to KRS 186.510.[3]  (Pet'r's Mem.

---

[3] This statute provides:

The licensee shall have his or her license in his or her immediate possession at all times when driving a motor vehicle and shall display it upon demand to the circuit

5

Supp. Writ Habeas Corpus 9).  In short, Ayers' contends that KRS 186.510 only applies to *licensees*, and he in fact did not have a valid driver's license at the time of his arrest.  (Pet'r's Mem. Supp. Writ Habeas Corpus 10).  As such, Ayers argues that Jefferson District Court should have granted a directed verdict on this charge, or, at the very least, tendered a jury instruction that required the jury to find that Ayers was a licensee as a condition of conviction.  (Pet'r's Mem. Supp. Writ Habeas Corpus 9-19).  In the R&R, the Magistrate Judge considered these arguments and concluded that they were procedurally defaulted because Ayers never argued either point before the trial court—i.e., he never moved for a directed verdict or objected to the jury instructions on the grounds that he was not a licensee.  (R&R 9-16).

Much of Ayers' objection on this point recites verbatim the arguments he raised before the Magistrate Judge.  (Pet'r's Mem. Supp. Writ Habeas Corpus 9-19; Pet'r's Obj. R&R 10-14, 40-45).  A mere recitation of arguments already raised are not objections under 28 U.S.C. § 636 and will not be reconsidered by this Court.  *See Howard*, 932 F.2d at 509.  Ayers specific objection takes issue with the Magistrate Judge's conclusion that his licensee argument was "procedurally defaulted" when he failed to raise it before the Jefferson District Court.  (Pet'r's Obj. R&R 14).

Generally speaking, a habeas corpus petitioner must exhaust state-court remedies before bringing a federal petition.  *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013) (citing 28 U.S.C. § 2254(b), (c)).  Relatedly, the procedural default rule dictates that "a federal court acting on a

---

clerk or examiner, a peace officer, a member of the Department of Kentucky State Police, or a field deputy or inspector of the Department of Vehicle Regulation or Transportation Cabinet or, pursuant to KRS 67A.075 or 83A.088, a safety officer who is in the process of securing information to complete an accident report.  It shall be a defense to any charge under this section if the person so charged produces in court an operator's license, issued to him or her before his or her arrest and valid at the time of his or her arrest.

KRS 186.510.

state prisoner's habeas petition will not review a question of federal law if the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgment.'" *Id*. at 295 (quoting *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). The state court exhaustion and procedural default rules are premised on the premise that state courts should have "an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732. A claim may be procedurally defaulted in two distinct circumstances:

> First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. Second, a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's "ordinary appellate review procedures." If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.

*Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (internal citations omitted) (citation omitted).

The record is clear that when Ayers moved for a directed verdict on the failure to present a license charge, he did not specifically argue that he was not a licensee within the ambit of KRS 186.510. (R&R 10). Similarly, he did not request a jury instruction that he must be a licensee to be convicted under KRS 186.510. (R&R 10). Because these arguments were not raised before the Jefferson District Court, the Jefferson Circuit Court declined to reach the merits of the licensee issue. (R&R 10). *See Pate v. Commonwealth.*, 134 S.W.3d 593, 597 (Ky. 2004), *as modified* (July 23, 2004) (holding that a directed verdict issue is not preserved for appellate review when specific grounds for the motion are not raised before the trial court); RCr 9.54(2) ("No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and

adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.").

As noted by the Magistrate Judge, this argument was procedurally defaulted for federal habeas purposes.  (R&R 11).  Ayers' objection contends that even though he failed to properly raise this issue before the trial court, the Jefferson Circuit Court should have still conducted a "palpable error" review pursuant to RCr 10.26.  (Pet'r's Obj. R&R 92).  This rule provides:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

Thus, under RCr 10.26, "an unpreserved error may be noticed on appeal only if the error is 'palpable' and 'affects the substantial rights of a party,' and even then relief is appropriate only 'upon a determination that manifest injustice has resulted from the error.'"  *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009).

On appeal, the Jefferson Circuit Court did not address the licensee question under the palpable error standard, nor did that court explain why it would not review this issue under RCr 10.26.  The Magistrate Judge considered the situation and concluded that palpable error review is discretionary on appeal, not mandatory.  (R&R 13).  After all, the plain text of the rule provides that a palpable error "*may* be considered . . . [and] review and appropriate relief *may* be granted . . . ."  RCr 10.26 (emphasis added).  This Court agrees with the Magistrate Judge that this permissive language reflects that palpable error review is within the discretion of the appellate court.  In *Shepherd v. Commonwealth*, 251 S.W.3d 309 (Ky. 2008), the Kentucky Supreme Court held that a "general request" for palpable error review was insufficient to trigger application of RCr 10.26.  *Id*. at 316.  Similarly, in *Trainer v. Commonwealth*, No. 2010-SC-000822-MR, 2012

8

WL 1899778 (Ky. May 24, 2012), the Kentucky Supreme Court declined to review for palpable error when a failure to object appeared to be a trial strategy. *Id*. at *10. Finally, in *Gray v. Commonwealth*, 479 S.W.3d 94 (Ky. App. 2015), the Kentucky Court of Appeals noted that "[t]he provisions of RCr 10.26 *authorize us* to consider a 'palpable error' even where the error was insufficiently preserved for review if it affects the substantial rights of a party." *Id*. at 96 (emphasis added). This language further indicates that RCr 10.26 *allows* palpable error review, but it does not *mandate* it. These cases together with the language of RCr 10.26 suggest that Kentucky appellate courts retain some discretion over palpable error review. Ayers' objection on this point does not cite to any case law to compel a contrary result.

Regardless of the Jefferson Circuit Court's rationale for not addressing Ayers' conclusory arguments for palpable error review, the fact remains that no Kentucky state court addressed Ayers' licensee argument on the merits. Rather, this issue was not presented to the Jefferson District Court and never addressed by the Jefferson Circuit Court. In other words, the state courts were unable to address this issue of state law "in the first instance" before these claims were raised in this habeas proceeding. *See* 28 U.S.C. § 2254(d) (stating that habeas corpus review applies to "any claim that was *adjudicated on the merits* in State court proceedings . . . ." (emphasis added)); *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) ("When a habeas petitioner fails to obtain consideration of a claim by a state court . . . that claim is procedurally defaulted and may not be considered by the federal court on habeas review." (citations omitted)). Because this issue was never addressed on the merits in state court because of Ayers' failure to comply with state procedural rules, this claim is procedurally defaulted.

Ayers contends that even if the Jefferson Circuit Court's palpable error review was so cursory that it did not warrant mention, this Court still should consider that determination as being

9

"adjudicated on the merits" and therefore not procedurally defaulted. (Pet'r's Obj. R&R 21). This Court has previously clarified, however, that palpable error review is only "a quasi-merits review" that does not save a claim from procedural default. *Elery v. Smith*, No. 3:16-CV-00446-GNS-LLK, 2019 WL 3417363, at *3 (W.D. Ky. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 2503969 (W.D. Ky. June 17, 2019); *see also Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default." (citation omitted)); *Kelly v. Smith*, No. 5:17-CV-437-KKC, 2019 WL 2189511, at *10 (E.D. Ky. May 21, 2019) ("Under Sixth Circuit precedent, a state appellate court's review for plain error (i.e., palpable error) is treated as the enforcement of a procedural default for habeas purposes." (citations omitted)).

Even so, a procedurally defaulted claim may still be considered if a petitioner can show either (1) cause and prejudice, or (2) actual innocence. *Nesser v. Wolfe*, 370 F. App'x 665, 669-70 (6th Cir. 2010); *Seymour*, 224 F.3d at 550. In other words, a procedural default may be excused to avoid a "miscarriage of justice." *Wainwright v. Sykes*, 433 U.S. 72, 91 (1977). "Cause" under this test "must be something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman*, 501 U.S. at 753 (citation omitted). "Prejudice" requires a showing that the alleged error "so infected the entire trial that the resulting conviction violates due process . . . ." *United States v. Frady*, 456 U.S. 152, 169-70 (1982) (internal quotation marks omitted) (citation omitted). The Sixth Circuit has further clarified that "[h]abeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citation omitted). Regarding actual innocence, such claims are "rarely successful" and require the petitioner to put forward "new

10

reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Once a petitioner has provided such new reliable evidence, the habeas court must assess all the evidence, including evidence 'that was either excluded or unavailable at trial.'" *Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 220 (6th Cir. 2019) (quoting *Schlup*, 513 U.S. at 328).

The Magistrate Judge considered these standards for cause, prejudice, and actual innocence and concluded that Ayers failed to excuse his procedural default through one of these exceptions. (R&R 11-13, 14-16). In particular, Ayers did not argue for cause and prejudice and did not offer any *new* evidence in support of his claim of actual innocence; rather, Ayers merely offered a new legal argument that could have been presented at trial. (R&R 12-13). Ayers again does not appear to argue the cause and prejudice exception, focusing instead on his claim for actual innocence. (Pet'r's Obj. R&R 36). Ayers contends that the "new reliable evidence" he now proffers is his new legal argument that he should have been charged under KRS 186.620(2),[4] not KRS 186.510. Even if this argument had merit, a new legal argument or tactic is not "new" as intended under the actual innocence standard—i.e., it is clearly not akin to "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence . . . ." *Schlup*, 513 U.S. at 324; *see, e.g.*, *Smith*, 780 F. App'x at 221 (considering new evidence not presented at trial, such as lab notes regarding DNA testing and new DNA tests); *Cleveland v. Bradshaw*, 693 F.3d 626, 635 (6th Cir. 2012) (same, but considering new recantation of eyewitness testimony, affidavits from experts,

---

[4] "No person who has not applied for an operator's license or whose operator's license has been denied, canceled, suspended or revoked, or whose privilege to operate a motor vehicle has been withdrawn, shall operate any motor vehicle upon the highways while the license is denied, canceled, suspended, or revoked or his privilege to operate a motor vehicle is withdrawn, or the license has not been applied for." KRS 186.620(2).

and flight records); *Trumbo v. Bottom*, No. CV-13-275-ART, 2015 WL 5063766, at *9 (E.D. Ky. Aug. 26, 2015) (same, but considering newly presented medical records).

Beyond Ayers' conclusory statement that "[a] new legal argument that was not made at trial is 'newly presented evidence' for purposes of 'actual innocence,'" he cites no authority supporting this argument. (Pet'r's Obj. R&R 39). To the contrary, if a new legal argument is properly considered "new reliable evidence" for actual innocence purpose, then every procedurally defaulted claim would be subject to actual innocence review so long as the petitioner presented a new legal theory. This outcome was clearly not intended by *Schlup*, in which the Supreme Court noted that "[b]ecause such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324.

In conclusion, Ayers' contentions that he should have received a directed verdict or a more favorable jury instruction on the KRS 186.510 charge were never raised before the Jefferson District Court. The Jefferson Circuit Court, in turn, did not expressly consider these arguments, even though it presumably could have under RCr 10.26 palpable error review. Either way, these claims were not addressed on the merits in accordance with state procedural rules. Ayers did not raise the cause and prejudice exception, nor did he present any new evidence under the actual innocence exception. As such, this line of argument has never been adjudicated on the merits by any state court and is procedurally defaulted for habeas purposes.

**B.    Ground II:  Directed Verdict and Jury Instruction Relating to Criminal Trespass under KRS 511.080(a) and a Trespass Exception under KRS 511.090(4)**

Ayers' second ground for relief takes issue with his conviction for criminal trespass pursuant to KRS 511.080, which provides that "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in or upon premises." KRS 511.080(a);

(Pet'r's Mem. Supp. Writ Habeas Corpus 19).  Specifically, Ayers challenges his conviction under an exception set forth in KRS 511.090, which provides that one cannot commit criminal trespass "upon unimproved and apparently unused land which is neither fenced nor otherwise enclosed . . . unless notice against trespass is personally communicated to him by the owner of the land or some other authorized person or unless notice is given by posting in a conspicuous manner."  KRS 511.090(4); (Pet'r's Mem. Supp. Writ Habeas Corpus 20).  As with Ground I, Ayers here contends that he was entitled to a directed verdict or a jury instruction regarding this exception because the property in question should have qualified as "unimproved and apparently unused land" and the police officers were not "authorized persons" who could ask him to leave the property.  (Pet'r's Mem. Supp. Writ Habeas Corpus 26-32).  The Magistrate Judge considered this argument and concluded that the state court's determination that this exception did not apply was not an unreasonable determination because notice against trespass was clearly communicated to Ayers by the police.  (R&R 21, 24).

As with the first ground for relief, much of Ayers' objection recites verbatim several pages of arguments already raised before the Magistrate Judge.  (Pet'r's Mem. Supp. Writ Habeas Corpus 19-32; Pet'r's Obj. R&R 49-56, 58-63).  In Ayers' present submissions, he doubles down on his contention that he was not criminally trespassing even after the officers asked him to leave the property because these officers were not "some other authorized person" under KRS 511.090(4). (Pet'r's Obj. R&R 57, 64).  Specifically, the thrust of Ayers' objection is that the Jefferson District Court, the Jefferson Circuit Court, and the Magistrate judge all adhered to "a mistake of law that

a police officer is authorized, regardless of the situation, to tell a person he is trespassing, with no legal authority from Kentucky or elsewhere for such a proposition." (Pet'r's Obj. R&R 66).

Generally speaking, however, it is not the prerogative of a federal habeas court to determine whether a state court correctly applied state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Rather, "a federal court's consideration of state law is limited, deferential, and considered only to the extent required to answer whether the application of state law violated the petitioner's federal constitutional rights." *Seaman v. Washington*, 506 F. App'x 349, 357 (6th Cir. 2012) (citing *Estelle*, 502 U.S. at 68; 28 U.S.C. § 2241); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) ("[W]e cannot grant the writ based on our disagreement with 'state-court determinations on state-law questions,' unless the state-court determination is so 'fundamentally unfair' that it deprives a defendant of due process." (internal citation omitted) (citation omitted)).

Ayers appears to contend that the state courts' interpretation of KRS 511.090(4) violated the federal "no evidence" doctrine of *Thompson v. Louisville*, 362 U.S. 199 (1960), and the "no rational trier of fact" doctrine of *Jackson v. Virginia*, 443 U.S. 307 (1979), such that the state court decisions "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . ." 28 U.S.C. § 2254(d)(1); (Pet'r's Obj. R&R 58-59). As the Sixth Circuit has interpreted *Jackson*, "[a] conviction is not supported by sufficient evidence if a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt." *Nash v. Eberlin*, 258 F. App'x 761, 765 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319).

As noted, the Jefferson Circuit Court affirmed the Jefferson District Court's denial of a directed verdict and refusal to provide a jury instruction on the criminal trespass exception set forth in KRS 511.090(4). (R&R 20-21). Specifically, the Jefferson Circuit Court stated:

> Ayers correctly argues that KRS 511.090(4) provides a defense to criminal trespassing on "unimproved and apparently unused land which is neither fenced nor otherwise enclosed . . . unless notice against trespass is personally communicated to him by the owner of the land or some other authorized person or unless notice is given by posting in a conspicuous manner." While the condition of the lot, including whether it was improved or enclosed, and the presence of conspicuous notice are questions of fact for the jury to determine in applying the defense, *Ayers has proffered no evidence to address the exception to the conspicuous notice requirement: personal communication by the property owner or other authorized person. Ayers never alleged he had permission of the property owner to be on the lot. However, the police have the authority to ask unauthorized persons to leave an area.*

(R&R 21 (emphasis added)). In other words, the Jefferson Circuit Court found that, as a matter of law, police officers are "authorized persons" under KRS 511.090(4) who are empowered to ask a trespasser to vacate another's property. The Magistrate Judge agreed with this conclusion and cited to *Helms v. Zubaty*, 495 F.3d 252 (6th Cir. 2007). (R&R 21). In *Helms*, the Sixth Circuit found that an officer had probable cause to arrest a defendant who "received and refused several requests to leave the office before she was arrested," including repeated requests from a police officer. *Id*. at 259. Ayers contends that *Helms* is inapposite here because the police officer was *explicitly* authorized by the legal occupant of the building to remove the trespasser. (Pet'r's Obj. R&R 65). Ayers' point is well-taken and does somewhat undermine the suggestion that *Helms* stands for the proposition that a police officer is always an *implicitly* "authorized person" under KRS 511.090(4). Ayers main problem, however, is that he offers no case law to support his alternative reading of the statute—i.e., that a police officer is authorized to ask a trespasser to vacate property only when the officer has the explicit permission of the landowner. Without the benefit of additional case law, this Court is hard-pressed to conclude that the Kentucky state courts

15

so badly misinterpreted state law that it resulted in a violation of clearly established federal law. To the contrary, the Jefferson Circuit Court's understanding of KRS 511.090(4) comports with reason. Certainly, it would be unjust to convict a defendant for trespassing on land so "unimproved and apparent unused" that he did not even know he was trespassing. This defense completely loses its force, however, when police officers place a person on notice that he is trespassing and must vacate the property.

Without any citation of authority to contradict the legal conclusion of the Kentucky state courts, Ayers has failed to demonstrate that these decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). The Magistrate Judge's recommendation is thereby adopted, and this ground for habeas relief is rejected.

C.      **Ground III:  Failure to Give a Jury Instruction After a Directed Verdict of Not Guilty was Granted as to Loitering for Prostitution Purposes under KRS 529.080**

Ayers' third and final ground for relief relates to the charge of loitering for prostitution purposes under KRS 529.080. (Pet'r's Mem. Supp. Writ Habeas Corpus 32). At the conclusion of the Commonwealth's case-in-chief, the Jefferson District Court granted a directed verdict of not guilty on this charge because only a prostitute can be charged under KRS 529.080, and the evidence demonstrated that Ayers was the patron. (Pet'r's Mem. Supp. Writ Habeas Corpus 33). Even so, Jefferson District Court did not inform the jury, who heard the evidence on this charge, that Ayers was found not guilty. (Pet'r's Mem. Supp. Writ Habeas Corpus 33). Ayers' contention in the case *sub judice* is that he was prejudiced by Jefferson District Court failure to provide this peremptory instruction. (Pet'r's Mem. Supp. Writ Habeas Corpus 36). The Magistrate Judge considered this argument and found that Ayers' counsel never asked for such an instruction nor

16

was the Jefferson District Court required to give one, *sua sponte*, such that federal habeas relief should be denied.  (R&R 35).

As above, much of Ayers' objection repeats his initial motion for habeas relief.  (Pet'r's Mem. Supp. Writ Habeas Corpus 32-36; Pet'r's Obj. R&R 69-73).  Ayers' objection then contends that an instruction that the prostitution charge was dismissed should be considered a mandatory peremptory instruction, not a limiting instruction.  (Pet'r's Obj. R&R 76).  Ayers relies on RCr 9.54(1), which provides in relevant part:  "It shall be the duty of the court to instruct the jury in writing on the law of the case, which instructions shall be read to the jury prior to the closing summations of counsel."  Ayers argues that an instruction "on the law of the case" must necessarily include an instruction that one of the previously pending charges was judicially dismissed.  (Pet'r's Obj. R&R 80).  As such, he contends that this trial error violated the clearly established federal law of *Estelle v. Williams*, 425 U.S. 501 (1976), which provides in relevant part:

> The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment.  The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. . . . To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process.  In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.

*Id*. at 503 (internal citation omitted) (citation omitted).  In other words, Ayers' argument is that the lack of an instruction that the prostitution charge was dismissed undermined his presumption of innocence and his right to a fair trial under the Fourteenth Amendment.

As an initial matter, the Magistrate Judge found that Ayers is entitled to *de novo* review of this issue because the Jefferson Circuit Court failed to analyze Ayers' arguments regarding the potential prejudicial effect of the prostitute's testimony.  (R&R 27); *see Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where, as here, the state court did not assess the merits of a claim

17

properly raised in a habeas petition, the deference due under AEDPA does not apply." (citing *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001)). When a petitioner alleges constitutional error due to the failure to provide for a defense instruction, the query is whether the error was "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *United States ex rel. Peery v. Sielaff*, 615 F.2d 402, 404 (7th Cir. 1979). When the alleged error is the omission of an instruction, the petitioner's "burden is especially heavy because . . . [a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Ayers here has not demonstrated that the failure to provide a jury instruction was an error so egregious that it resulted in a "complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." To the contrary, it is unclear what specific prejudice Ayers faced as a result of the failure of the trial court judge to inform the jury that a directed verdict of dismissal was granted as to the loitering for prostitution purposes charge under KRS 529.080. Ayers suggests that the prostitute's testimony about their sexual encounter— "Ayers had agreed to pay a prostitute for oral sex; the prostitute was not a woman, but rather a man; Ayers had not climaxed during the oral sex; and Ayers had not paid the twenty dollars agreed upon"—could allow the jury to conclude that he was "morally bankrupt and/or a pervert." (R&R 71-73). While this testimony may have been sensational or even inflammatory, it is unclear how such testimony would prejudice the jury regarding the other charges for criminal trespass and failing to present a driver's license. Beyond his vague allegations that prejudice resulted, Ayers does not explain how this testimony could have potentially impacted the jury's determination on the discrete elements of these other charges. Nor, for that matter, has Ayers provided any case law

that would compel the Court to reach that conclusion.  There is no indication that this mistake resulted in such prejudice that it amounts to a "complete miscarriage of justice" or is "inconsistent with the rudimentary demands of fair procedure."

Similarly, Ayers has failed to persuasively show that any such error violated his constitutional right to a presumption of innocence.  It is unclear how the prostitute's description of the sexual encounter with Ayers would cause the jury to presume Ayers was also guilty of driving without a license or criminal trespass.  Moreover, as noted by the Magistrate Judge, the trial court actually did instruct the jury that Ayers was entitled to the presumption of innocence on all charges.  (R&R 34).  Courts generally presume that jurors heed these instructions.  *See United States v. Wright*, 16 F.3d 1429, 1443 (6th Cir. 1994) (noting that there is a "presumption that a jury follows the instructions presented . . . ."  (citation omitted)).

In conclusion, a petitioner is not entitled to habeas relief for every mistake or error that might have occurred at trial.  *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Federal courts are not forums in which to relitigate state trials."  (citation omitted)).  Rather, a petitioner must demonstrate how these mistakes violated clearly established federal law.  In this case, Ayers has not established that the jury instruction error rose to the level of a constitutional violation.  Ayers' third and final ground for habeas relief is thereby rejected.

### D.  **Evidentiary Hearing and Certificate of Appealability**

"Generally, a habeas petitioner is entitled to an evidentiary hearing in federal court if the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing.'"  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether the hearing could enable an applicant

to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). The Magistrate Judge concluded that there is no need to hold an evidentiary hearing in the present matter. (R&R 36). Ayers has not specifically objected to this determination, such that the Magistrate Judge's recommendation is adopted. No evidentiary hearing will be held.

Next, a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In other words, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). When a claim is denied on procedural grounds, a petitioner seeking to appeal must show "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

The Magistrate Judge here recommended that a certificate of appealability should be denied as to Grounds I and II and granted as to Ground III. (R&R 36-37). This Court agrees that Ayers' first ground for relief—regarding his status as a licensee—was procedurally defaulted and that no reasonable jurist would conclude otherwise. Similarly, the Court agrees that Ayers' second ground for relief—regarding a police officer's authorization to ask a trespasser to vacate—does not deserve further encouragement to proceed given the complete dearth of case law to support Ayers' argument. Ayers objected to these recommendations by the Magistrate Judge; yet, despite his 92-page objection, the arguments for a certificate of appealability were conclusory and

confined to footnotes.  (Pet'r's Obj. R&R 49 n.19, 69 n.22, 91 n.30).  The Court will not consider such general objections.  *See Howard*, 932 F.2d at 509.  As to Ground III—regarding the failure to inform the jury about the directed verdict of not guilty on the prostitution-related charge—the Magistrate Judge recommended that a certificate of appealability be granted.  (R&R 37).  No party has objected to this determination, such that the Court will accept the recommendation of the Magistrate Judge.

## V.      CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1.      The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 35) are **ADOPTED** as and for the opinion of this Court.

2.      Petitioner's Objection (DN 40) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 35) is **OVERRULED**.

3.      Petitioner's Petition for Habeas Relief (DN 1) is **DISMISSED WITH PREJUDICE**.

4.      A certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) is **DENIED** as to Grounds I and II of Petitioner's Petition but **GRANTED** as to Ground III.

Greg N. Stivers, Chief Judge
United States District Court

July 15, 2020

cc:      counsel of record

21